**This order is SIGNED.**

**Dated: November 19, 2019**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*ar*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

| In re: | Bankruptcy Number: 18-24837 |
|---|---|
| JENNIFER MARIE CLOWARD | Chapter 7 |
| Debtor | Hon. Kevin R. Anderson |

**MEMORANDUM DECISION ON MOTION FOR SANCTIONS**
**FOR VIOLATION OF THE AUTOMATIC STAY (DOCKET NO. 22)**

    In this case, the Debtor seeks sanctions against a hospital for an alleged stay violation arising from the hospital's post-petition filing of a notice of a hospital lien arising from emergency medical services it provided to the Debtor before her bankruptcy filing. While bankruptcy courts routinely encounter matters involving the automatic stay, this Motion presents an issue of first impression in Utah; namely, does a Utah hospital lien attach when a hospital provides medical services or when it files a notice of lien?

    On September 6, 2019, the Court conducted a hearing on the Debtor's motion, at which William P. Morrison appeared for the Debtor. Matthew Cox and Nathan Mitchell appeared on behalf of the Intermountain Medical Center and MedData, Inc. After carefully considering the

Debtor's motion, oral argument, and supplemental briefing, and after conducting its own independent research of applicable law, the Court hereby issues the following Memorandum Decision denying the Debtor's motion.

## I. JURISDICTION, NOTICE, AND VENUE

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is appropriate in this District under 28 U.S.C. §§ 1408 and 1409, and notice of the motion was properly served on all parties in interest.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

1. While riding a motorcycle on May 23, 2018, the Debtor was involved in a collision with a car. The Debtor was taken to Intermountain Medical Center (the "Hospital") and treated for serious injuries, including a partial amputation of her leg.

2. On June 12, 2018, the Debtor was discharged from the hospital, even though she continued to incur medical expenses with the Hospital through June 30, 2018.[1]

3. After being discharged by the Hospital, the Debtor retained the law firm of Robert J. DeBry to represent her in a personal injury claim against the driver of the car.

4. On June 28, 2018, the Debtor filed a Chapter 7 petition.[2]

5. On July 12, 2018, the Debtor filed her Statement of Financial Affairs, wherein she represented she was not a party to any lawsuit within the year prior to the date of the petition, and that none of her property was in the possession of an assignee for the benefit of creditors.[3] The Debtor did, however, disclose a "[b]odily injury claim for compensatory damages from auto-motorcycle accident of May 2018 (claim is pending – value unknown)."[4]

---

[1] ECF No. 26, Exhibit A.
[2] ECF No. 1.
[3] ECF No. 8, Question 9 and 12 of Statement of Financial Affairs.
[4] ECF No. 8, Question 33 of Schedule A/B.

6. While the amount of her hospital bills were unknown at the time of her bankruptcy filing, the Debtor listed her total, non-priority unsecured debts at $32,667.19.[5]

7. On September 11, 2018, the Hospital, through its agent Med-Data Inc.,[6] filed a notice of hospital lien in the Third District for the State of Utah (the "State Court"), case no. 18-0906607.[7] The State Court docket for the hospital lien lists as defendants Emily Fisher (the car's driver) and "Progressive" (the driver's insurance company). The notice lists the Debtor as the "Other Party."[8] The hospital lien amount is stated as $300,952.69 (the "Hospital Lien").

8. Neither the Trustee nor the Debtor engaged in actions regarding the disposition of the Hospital Lien, and on September 13, 2018, the Trustee filed a Report of No Distribution.

9. On October 3, 2018, and the Court entered an Order of Discharge for the Debtor.[9]

10. The Debtor asserts that after her discharge, her personal injury attorney made many unsuccessful attempts to obtain the release of the Hospital Lien. The Debtor further asserts that the Hospital Lien has prevented her from receiving exempt funds for her personal injury claim. However, at this time, the Court has not received any evidence to support these allegations.

11. On February 22, 2019, Debtor's counsel sent the Hospital a letter demanding that the Hospital immediately release its lien and pay $1,500 in damages by March 8, 2019.[10]

12. On March 1, 2019, the Hospital released its lien.[11]

---

[5] ECF No. 8, Schedule E/F.
[6] The Hospital and Med-Data Inc. are named as parties to the motion for sanctions and are herein after collectively referred to as the "Hospital."
[7] ECF No. 30, Exhibits A and B.
[8] ECF No. 30, Exhibit B.
[9] ECF No. 13.
[10] ECF No. 26, Exhibit C.
[11] ECF No. 22, ¶ 12.

13. On March 8, 2019, the Hospital's attorney responded in writing to Debtor's counsel, stating the Hospital had a good-faith basis for not releasing the lien. Further, because the Hospital had not violated the stay, but had nonetheless released it lien, it declined to pay the requested $1,500.[12]

14. On March 11, 2019, Debtor's counsel responded to the Hospital with an e-mail saying the Debtor would proceed to prosecute her claim for damages in the bankruptcy court.[13]

15. On May 13, 2019, the Debtor filed a motion against Intermountain Medical Center and Med-Data, Inc. seeking the following relief: (1) holding the Hospital in civil contempt for willfully violating the stay and discharge; (2) awarding $15,000 in punitive damages, or such higher amount as the Court deems appropriate; (3) requiring the Hospital to reimburse the Debtor for all of monetary damages sustained as a result of the violation of the stay and discharge, including Debtor's costs and reasonable attorney fees; and, (4) requiring the Hospital to immediately purge themselves from contempt by forthwith abiding by the terms of the stay and discharge and by promptly satisfying all monetary judgments entered against them.[14]

### III. ANALYSIS

#### 1. Summary of the Parties' Positions.

The Debtor asserts that the plain language of Utah's Hospital Lien Law[15] creates only a permissive and conditional right to a lien that does not attach until the hospital complies with the notice requirements of the statute. And because the Hospital did not file its notice of lien until

---

[12] ECF No. 26, Exhibit E.
[13] *Id*., Exhibit F.
[14] ECF No. 22.
[15] UTAH CODE ANN. § 38-7-1.

after the Debtor's bankruptcy filing, its actions are a willful violation of the stay that caused the Debtor injury.

In counterpoint, the Hospital asserts that its lien attached pre-petition at the time it rendered medical services to the Debtor, and that its post-petition filing of a notice of lien in the State Court was permissible under the Bankruptcy Code as an act to perfect a pre-existing lien.

Thus, a dispositive issue in this case is whether the Hospital's lien attached at the time it rendered emergency medical services to the Debtor, or when it filed its notice of lien with the State Court.

### 2. When did the Hospital Lien Attach?

Utah's Hospital Lien Law provides that a hospital that furnishes medical services "to a patient injured by reason of an accident **is entitled to assert a lien** upon that portion of the judgment, settlement, or compromise going or belonging to the patient . . . ."[16] The Hospital Lien Law further provides that a "hospital lien . . . **shall be effective**" if (1) a notice of lien is filed in the district court where the hospital is located; (2) a copy of the notice is sent to the person(s) alleged to be liable to the injured individual; and (3) a copy of the notice is sent to the insurance carrier for the liable person(s).[17]

The parties disagree whether the statutory phrase "is entitled to assert a lien" means a hospital lien "attaches" when medical services are rendered or when the notice of lien is given. However, the parties and the Court agree that the term "shall be effective" relates to the perfection of a hospital lien.

---

[16] UTAH CODE ANN. § 38-7-1(a) (emphasis added).
[17] UTAH CODE ANN. § 38-7-2 (emphasis added).

Property rights in bankruptcy are determined according to state law.[18] Utah courts have not ruled on when a hospital lien attaches to the patient's right to compensation for an injury. When federal courts are required to interpret a state statute, they "must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule."[19] Federal courts are then to "interpret state laws according to state rules of statutory construction."[20] Fortunately, there is the recent Utah Supreme Court decision of *Bryner v. Cardon Outreach*[21] that provides guidance on the interpretation of Utah's Hospital Lien Law.

In *Bryner*, patients filed a class action suit arguing that the Hospital Lien Law required a hospital to pay a pro rata share of litigation costs incurred in the recovery of compensation for the injured patient. The hospitals countered that the Hospital Lien Law contained no such language and instead operated "to establish a priority system as to entitlement to settlement funds to allow hospitals to get paid."[22]

The Utah Supreme Court explained that statutes should be interpreted according to their plain language when read in harmony with other text in the same chapter.[23] Further, while there may be competing interpretations, a statute is unambiguous "if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible."[24] Based on the "whole-text canon"[25] approach to statutory interpretation, the court found no ambiguity in

---

[18] *Butner v. United States*, 440 U.S. 48, 55 (1979) (property interests in bankruptcy are "created and defined by state law" unless a federal interest requires a different result).
[19] *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006).
[20] *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007).
[21] *Bryner v. Cardon Outreach, LLC*, 428 P.3d 1096 (Utah 2018).
[22] *Id*. at 1098.
[23] *Id*. at 1099.
[24] *Id*. at 1099-1100 (citation omitted).
[25] "[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Id*. at 1100 citing to ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012).

the Hospital Lien Law, and while both parties offered possible interpretations, only the hospital's interpretation was plausible, given the text of the act as a whole.

    a. The Competing Interpretations.

At issue in this case is the temporal, operative effect of the statutory text stating that a hospital "is entitled to assert a lien." The Debtor argues there is nothing in the text to suggest the "automatic" attachment of the lien. Rather, the phrase "entitled to assert a lien" is permissive and conditional in that the lien does not attach until the hospital takes action to assert its lien by complying with the notice requirements of UTAH CODE ANN. § 38-7-2. This section directs the hospital to file a notice of lien in the applicable state court and to serve a copy on persons liable for the patient's injuries. The Debtor further argues that the Hospital's interpretation would require the statute to use the phrase "the hospital has a lien" or to include some temporal modifier such as "the hospital has an immediate lien" or "has an automatic lien."[26] Thus, the Debtor concludes, the Hospital's lien did not attach until it filed and served its notice of lien in accordance with UTAH CODE ANN. § 38-7-2. And because the Hospital filed its notice of lien post-petition, it willfully violated the automatic stay.

The Hospital argues that the plain language of the UTAH CODE ANN. § 38-7-1 grants it an immediate and automatic statutory lien upon the occurrence of only two conditions: (1) the hospital furnishes emergency, medical, or other service to a patient; and (2) the patient is injured by reason of an accident. The Hospital also asserts that its interpretation is more logical, consistent, and plausible within the statutory scheme of the Hospital Lien Law when read as a whole.

---

[26] ECF No. 31, p. 10. *See e.g.* UTAH CODE ANN. § 38-2-7(3) which states, "An attorney's lien commences at the time of employment of the attorney by the client."

After considering the plain meaning of "is entitled to assert a lien," coupled with the entirety of the Hospital Lien Law in view of its structure and the logical relation of its many parts, the Court finds for the following reasons that the phrase "is entitled to assert a lien" is unambiguous as to its operative effect to statutorily grant the attachment of a lien at the time a hospital "furnishes emergency, medical, or other service to a patient injured by reason of an accident . . . ."[27]

      b. <u>The Plain Meaning Approach.</u>

The Court first considers the plain meaning of the phrase "is entitled to assert a lien." In legal usage, the phrase "is entitled to" means "has a right to."[28] This is consistent with its common usage, as Webster's defines "entitle" as "to give a title to"[29] and defines "entitled" as "having a right to certain benefits or privileges."[30] The term "entitlement" is defined as an "absolute right to a . . . benefit . . . granted immediately upon meeting a legal requirement."[31] Next, the legal definition of "assert" is "to invoke or enforce a legal right."[32] All of these definitions are stated in the context of a presently arising right and not one that is contingent on the occurrence of a subsequent event. Thus, replacing the terms "entitled" and "assert" with these definitional phrases leads the Court to conclude that the Utah Legislature intended to grant a hospital an immediate right to a lien against a patient's judgment, settlement, or compromise when the hospital meets the legal requirement of furnishing services "to a patient injured by reason of an accident."[33]

---

[27] UTAH CODE ANN. § 38-7-1(1)(a).
[28] BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE, 942 (2d. ed. 1995).
[29] *Entitle Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/entitle (last visited Oct. 29, 2019).
[30] *Id. Entitled Definition.*
[31] *Id. Entitlement Definition.*
[32] *Assert*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[33] UTAH CODE ANN. § 38-7-1(1)(a).

      c.   The Whole-Text Cannon Approach.

Further, the "whole-text cannon" approach supports an interpretation that the Hospital Lien Law grants an immediate right to a lien. First, the Utah Supreme Court held in *Bryner*:

> Read as a whole, Utah Code section 38-7-1(1) creates a priority for the distribution of the "judgment, settlement, or compromise going or belonging to the patient . . . ." Subsection 1(b) establishes that **the hospital has priority over any other creditor or the patient** to the entirety of the net judgment (total judgment less attorney fees) up to its asserted lien . . . . In other words, **the total amount of the judgment "going or belonging to the patient" is first used to pay or reimburse attorney fees, with the net judgment becoming available to cover the entirety of the hospital lien**. Any remaining funds go to other lien holders, if they exist, and then the patient receives the final amount.[34]

It is clear from this holding that the hospital lien is intended to trump the interest of all claimants to the patient's right to compensation (except for litigation costs to recover such compensation), including the patient's interest in such compensation. The Debtor's interpretation would allow a patient to avoid a hospital lien by quickly, and possibly surreptitiously, settling a claim before the hospital could file its lien. Therefore, to give effect to the legislative purpose behind the Hospital Lien Law, the Hospital's interpretation is the most plausible.

Second, UTAH CODE ANN. § 38-7-2 states that "[a] hospital lien . . . shall be effective if" certain notice requirements are satisfied. The term "effective" means the lien is perfected. Logically, a lien cannot be perfected against third parties unless it first attaches to the collateral and is enforceable as between the hospital and the patient. While the Uniform Commercial Code does not apply to statutory liens,[35] its concepts of attachment offer a helpful analogy. UTAH CODE ANN. § 70A-9a-203 provides that a security interest attaches to collateral when it is enforceable against the debtor. And it is enforceable against the debtor when (1) the creditor

---

[34] *Bryner*, 428 P.3d at 1100 (emphasis added).
[35] See UTAH CODE ANN. § 70A-9a-109(3)(b).

gives value; (2) the debtor has an interest in the collateral; and (3) the debtor has consented to the grant of a security interest. Here, at the time of the services, the Hospital gave the Debtor value, the Debtor had an interest in compensation for her injuries, and the Debtor was deemed to have consented to the hospital lien.[36] Thus, the Debtor's interpretation is implausible given the structure of the Hospital Lien Law that provides first for the attachment of the lien under UTAH CODE ANN. § 38-7-1, and then the perfection of the lien under § 38-7-2.

Third, to perfect a hospital lien, UTAH CODE ANN. § 38-7-2(1) explains that the hospital must file a verified written notice in the district court in the county where the hospital is located. The notice must contain the details of who was injured, the date and amount of services rendered, and the person(s) alleged to be liable for the patient's injuries. The purpose of perfecting the lien by a court filing is to put the world on notice of the hospital lien.[37] However, this notice is not only for the benefit of other creditors, but, as explained more fully below, it also informs a liable party that it must first pay the hospital lien, or it may have to pay twice.[38]

UTAH CODE ANN. § 38-7-2(2) and (3) next require that a copy of the notice of lien must be sent "by certified mail . . . prior to the payment of any money to the injured person . . . to the person . . . alleged to be liable to the injured party for the injuries and/or damages sustained" and to "any insurance carrier that has insured the person . . . against liability . . . ." The Court observes that a written notice is <u>not</u> sent to the injured patient.[39] This omission is logical only if

---

[36] *See Bryner*, 428 P.3d at 1103 ("The relationship between a hospital and a patient is generally a contractual one – either expressed through signing the forms upon admission and consenting to treatment or implied through receiving emergency treatment even without signing the forms."); *In re Nelson*, 92 B.R. 837, 840 (Bankr. D. Minn. 1988) (under the hospital lien statute, the patient is legally deemed to have consented to the creation and attachment of the hospital lien).

[37] *Wainscott v. Centura Health Corp.*, 351 P.3d 513, 521 (Colo. App. 2014) ("The objective of the filing requirement is to place any potentially liable parties on constructive notice that the hospital has a lien against any settlement or judgment involving the injured person.").

[38] See UTAH CODE ANN. § 38-7-3.

[39] While the title of UTAH CODE ANN. § 38-7-2 includes the phrase, "Mailing to injured person, heirs or legal representative," the statute does provide that the notice be mailed to the injured person. Accordingly, the Court

the lien already exists as between the hospital and the patient; otherwise, the hospital would be required to give the patient notice of the lien.

Indeed, the filing of a notice of lien is not intended to impact the rights of the hospital vis-à-vis the patient. UTAH CODE ANN. § 38-7-3 provides that if a liable party has notice of the hospital lien under § 38-7-2, and fails to pay the hospital lien, that party "shall be liable to the hospital for the amount that the hospital was entitled to receive." In other words, the purpose of the lien notice is not to create a security interest between the hospital and the patient but to put liable parties on notice that they must first pay the hospital lien or risk paying twice. Thus, the only plausible interpretation of the Hospital Lien Law, when taken as a whole, is that the lien attaches when the hospital furnishes services to a patient injured by reasons of an accident.

Lastly, and most persuasively, is that the Hospital's interpretation is consistent with UTAH CODE ANN. § 38-7-2.5 that sets the consequences if a notice of lien is not properly filed under § 38-7-2. Specifically, subsection (3) provides: "Failure to meet the notice requirements of Subsections 38-7-2(1) and (2) **does not: (a) invalidate any lien arising** at common law or in equity or **by any statute of this state**."[40] This is a clear statement that the Utah legislature did not intend to invalidate a preexisting hospital lien based on a failure to satisfy the noticing requirements of § 38-7-2. Instead, the consequence for a failure to comply is (1) a denial of costs and attorney's fees to enforce the lien against the payor of compensation, or (2) damages for failure to remove or correct a noncomplying notice of lien.[41] In other words, a hospital's failure

---

will not consider the title in interpreting the statute. *See Funk v. Utah State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992) (the title of a statute is not part of its text, and it should not be used for interpretation, especially when the statutory text is unambiguous and more specific than the title).

[40] UTAH CODE ANN. § 38-7-2.5(3) (emphasis added).
[41] UTAH CODE ANN. § 38-7-2.5(1) and (2).

to file a notice of lien under UTAH CODE ANN. § 38-7-2 does not invalidate the lien granted by § 38-7-1 at the time medical services are furnished.

Based on a consideration of the "entire text, in view of its structure and of the physical and logical relation of its many parts,"[42] the Court finds that the Hospital Lien Law grants the hospital an immediate lien interest that attaches to the patient's entitlement to compensation for injuries when the hospital furnishes services to a patient injured by reason of an accident. Further, the Court finds that the notice requirements of UTAH CODE ANN. § 38-7-2 only relate to the perfection of the lien as to other parties, and specifically persons liable for the patient's injuries. Thus, the notice requirements do not negatively impact the attachment or effectiveness of the hospital lien as between the hospital and the patient.

    d. <u>Public Policy Supports the Court's Interpretation That the Hospital Lien Attaches When Medical Services are Furnished.</u>

In addition to this statutory analysis, the Court's interpretation is also consistent with the public policy underpinning hospital liens. As recognized by the Utah Supreme Court:

> Hospital lien statutes serve important public policy roles. Hospital lien laws can balance the competing interests of injured patients, hospitals, attorneys, and other parties who may have an interest in proceeds arising out of personal injury claims. First, by affording hospitals direct and prioritized interest in funds collected by personal injury patients, the statute encourages the treatment of accident victims who may have no other means to pay. Second, because the statute grants hospitals a secured interest in those funds, it reduces the amount of litigation that may otherwise have to occur to obtain collection of the healthcare debt.[43]

Courts have also noted that because hospital lien statutes are remedial, they should be construed to give full force and effect to their beneficial purposes.[44]

---

[42] *Bryner v. Cardon Outreach, LLC*, 428 P.3d 1096, 1100 (Utah 2018).
[43] *Id*. at 1103 n. 18 (citing to Carol A. Crocca, Annotation, *Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery from Tortfeasor Causing Patient's Injuries*, 16 A.L.R. 5th 262 (1993)). *See also Wainscott v. Centura Health Corp.*, 351 P.3d 513, 520-22 (Colo. App. 2014) (collecting cases expressing public policies and benefits behind hospital lien statutes).
[44] *Wainscott*, 351 P.3d at 524.

Were this Court to adopt the Debtor's interpretation that the lien arose only after the hospital filed a notice of lien, it would undermine the policies behind the hospital lien statute by allowing patients to circumvent the statute's intent to incentivize hospitals to treat uninsured accident victims while concurrently weakening a hospital's ability to collect on its lien without resorting to litigation. Accepting the Hospital's interpretation that the lien attaches at the time services are rendered is most consistent with the language and expressed purposes of the Utah Hospital Lien Act.

> e. Other Cases are Consistent with the Court's Interpretation That the Hospital Lien Attaches When Medical Services are Furnished.

The Court's interpretation of Utah's Hospital Lien Law is likewise consistent with other state court cases that have addressed this issue. In *Rolla Cmty. Hosp. v. Dunseith Cmty. Nursing Home*,[45] the lien statute at that time stated that a hospital "shall be entitled to a lien" for rendering services to a person injured in an accident. This is similar to Utah's lien statute which says that a hospital "is entitled to assert a lien." The defendants in *Rolla*, like the Debtor in this case, argued that that the language was permissive and did not give the hospital a lien until it complied with the notice requirement. In rejecting this argument, the North Dakota court cited to *Palm Springs General Hosp. v. State Farm Mut. Ins. Co.*,[46] where the statute likewise provided that a hospital "shall be entitled to a lien." The Florida court noted that if this language was permissive, it would destroy the effect of the act by allowing a patient to quickly accept an injury settlement before the hospital could file its notice of lien. Thus, the Florida court held that "a lien in favor of the hospital attaches from the moment an injured person . . . is admitted as a patient" and is then perfected by the filing of the notice of lien.[47] The North Dakota Supreme Court

---

[45] *Rolla Cmty. Hosp. v. Dunseith Cmty. Nursing Home*, 354 N.W.2d 643 (N.D. 1984).
[46] *Palm Springs Gen. Hosp. v. State Farm Mut. Ins. Co.*, 218 So. 2d 793, 798 (Fla. Dist. Ct. App. 1969).
[47] *Id*.

agreed with this analysis and held that "institutions furnishing care and treatment . . . acquire a lien upon rendering such service."[48] This Court concurs.

In the similar case of *St. Luke's Hosp. of Fargo, Inc. v, Smith (In re Smith)*,[49] the debtor was injured in a motorcycle accident and taken to a hospital, where he incurred $50,000 in medical bills. The debtor ultimately received a settlement for his injuries and then filed for bankruptcy. At this time, the North Dakota lien statute had been changed from "shall be entitled" to "is entitled." The debtor argued that this evidenced a legislative intent to render hospital liens permissive; thus, there was no lien until the hospital complied with all of the statute's notice requirements. The bankruptcy court disagreed finding that "[i]t is the mere furnishing of services that creates the lien and it is either by actual or constructive notice that the lien is perfected." The bankruptcy court further held that the hospital's lien could not be avoided under § 522(f) or § 545; thus, the debtor's settlement was subject to the hospital's lien.[50]

In *W. Neb. Gen. Hosp. v. Farmers Ins. Exch.*, the Nebraska Supreme Court found that the term "shall have a lien" meant that the lien attaches when a patient is admitted to the hospital.[51] The court noted that the notice requirements of the hospital lien statute were not rendered superfluous by this ruling:

> The hospital's lien is enforceable as against *the injured party* upon attachment, regardless of whether the hospital complies with the statute's notice provisions. Perfection, on the other hand, is required if the hospital seeks to enforce the lien against *third parties,* such as the tort-feasor. Read in this manner, the statutory scheme is similar to the well-known rule that the recording of a deed or mortgage

---

[48] *Rolla Cmty. Hosp.*, 354 N.W. 2d at 650.

[49] *St. Luke's Hosp. of Fargo, Inc. v. Smith (In re Smith),* 119 B.R. 714 (Bankr. N.D. 1990).

[50] *See also In re Nelson*, 92 B.R. 837 (Bankr. D. Minn. 1988) (hospital lien statute stating "shall have a lien" meant that lien attached when medical services were provided).

[51] *W. Nebraska Gen. Hosp. v. Farmers Ins. Exch.*, 475 N.W.2d 901 (Neb. 1991).

is only relevant as against subsequent purchasers for value, but does not affect the validity of the transaction as between the parties themselves.[52]

Finally, in *Blankenbaker v. Jonovich*, the Arizona Supreme Court held that its hospital lien statute, with the similar phrase "is entitled to a lien," means that "a medical lien arises when treatment is provided . . . ."[53]

For these reasons, the Court finds that lien under the Hospital Lien Law arises and attaches immediately and automatically when a Utah hospital "furnishes emergency, medical, or other service to a patient injured by reason of an accident . . . ."[54]

### 3. Did the Hospital Willfully Violate the Automatic Stay When It Filed Its Notice of Lien?

Having found that the Hospital's Lien arose and attached pre-petition under UTAH CODE ANN. § 38-7-1, the issue then becomes whether the Hospital nonetheless willfully violated the stay when, under UTAH CODE ANN. § 38-7-2, it filed its post-petition notice of lien with the State Court.

While the § 362(a)(5) enjoins any "act to create, perfect, or enforce against property of the debtor any lien," § 362(b)(3) contains an exception to the automatic stay where a creditor takes steps to maintain a lien that predates the petition. The relevant provision states:

> The filing of a petition . . . does not operate as a stay . . .
> . . .
> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . . .[55]

---

[52] *Id.* at 905 (emphasis in original) (citing *McKenzie v. Beaumont*, 97 N.W. 225 (1903); *Staples v. Miller*, 319 N.W.2d 57 (Minn. 1982).

[53] *Blankenbaker v. Jonovich*, 71 P.3d 910, 913 (2003) (citing *Andrews v. Samaritan Health Sys.*, 36 P.3d 57 (Ariz. Ct. App. 2001)). *See also Macon-Bibb Cty. Hosp. Auth. v. Nat'l Union Fire Ins. Co.*, 793 F. Supp. 321, 323 (M.D. Ga. 1992) (hospital lien arises automatically); *Guin v. Carraway Methodist Med. Ctr.*, 583 So. 2d 1317 n. 1 (Ala. 1991) (hospital liens are automatic); *Pub. Health Trust of Dade Cty. v. Carroll*, 509 So. 2d 1232, 1234 (Fla. Dist. Court. App. 1987) ("lien attaches the moment an injured person is admitted as a patient.").

[54] UTAH CODE ANN. § 38-7-1(a).

[55] 11 U.S.C. § 362(b)(3).

In turn, § 546(b)(1)(A) provides that the rights of the trustee "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires such right in such property before the date of perfection."[56] In other words, these sections create an exception to the stay for a creditor with a pre-petition lien interest in a debtor's property that was not perfected when the debtor filed for bankruptcy, and that would be effective against a third party acquiring rights in the property prior to the creditor's perfection of its lien interest.

The practical effect of this exception to the automatic stay is exemplified in *In re Branch Banking & Trust Co. v. Constr. Supervision Servs. (In re Constr. Supervision Servs.)*.[57] In that case, subcontractors with pre-petition mechanics liens sought bankruptcy court approval to perfect their liens post-petition by giving the notice required under the lien statute.[58] A creditor objected, saying the subcontractors lacked an interest in the collateral because they had not perfected their liens prior to the bankruptcy filing. On appeal, the Fourth Circuit noted that under § 546(b), "the intervention of a [bankruptcy] petition . . . should not cut off an interest holder's opportunity to perfect where the interest holder could have perfected against an entity subsequently acquiring rights in the property if bankruptcy had not intervened."[59]

The Fourth Circuit noted that the subcontractors' held a pre-petition interest in the debtor's property through the operation of the mechanics lien statute, which stated that a subcontractor that provides labor or materials "shall be entitled to a lien . . . ." The applicable statute also stated that the lien "is perfected upon the giving of notice of claim of lien . . . ." The

---

[56] 11 U.S.C. 546(b)(1)(A).
[57] *In re Branch Banking & Trust Co. v. Constr. Supervision Servs. (In re Constr. Supervision Servs.)*, 753 F.3d 124 (4th Cir. 2014).
[58] *Id.* at 126.
[59] *Id.* (citations omitted).

court explained that the filing of the lien put others on notice of the creditor's interest but did not create a new interest in property for purposes of § 546(b).[60] In other words, it was the providing of labor or materials, and not the notice of lien, that created the subcontractor's interest in the collateral for purposes of § 546(b).

In *In re AR Accessories Grp., Inc.*,[61] the issue was whether a state's filing of a lien to recover unpaid employee benefits violated the stay. The state argued that the lien related back to the date these items were first unpaid such that the exception of § 362(b)(3) applied. The Seventh Circuit held that the phrase "before the date of perfection" modifies the language "any entity that acquires rights in such property," such that "the perfected interest takes effect (with superpriority) when it is perfected because any other property interest acquired pre-perfection is subject to the perfected interest."[62] That is to say, a statutory lien that primes other interests "need not contain language expressly providing for retroactive perfection in order to trigger the exception provided in 11 U.S.C. § 546(b)(1)(A) to the automatic stay of postpetition efforts to perfect a property interest."[63] And this is indeed the case for Utah's Hospital Lien Law. As made clear in *Bryner*, a hospital lien primes all other liens and interests, including the patient's interest, except for attorney's fees and costs incurred to recover from the liable parties.

Similarly, the First Circuit in *229 Main St. Ltd. P'ship. v. Mass. EPA (In re 229 Main St.)* held that the post-petition perfection of a statutory lien fell within the exception of § 362(b)(3), so long as the creditor held a pre-petition interest in the property.[64] In that case, the debtor alleged that the state EPA violated the automatic stay by continuing to pursue perfection of its

---

[60] *Id*. at 129 (citing *In re AR Accessories Grp., Inc.*, 345 F.3d 454, 459 n. 4 (7th Cir. 2003)).
[61] *In re AR Accessories Grp., Inc.*, 345 F.3d 454 (7th Cir. 2003).
[62] *Id*. at 458.
[63] *Id*.
[64] *229 Main St. Ltd. P'ship. v. Mass. EPA (In re 229 Main St.)*, 262 F.3d 1 (1st Cir. 2001).

statutory lien for environmental cleanup. On appeal, the court rejected the debtor's argument that a state lien statute must explicitly provide that perfection relate back to a pre-petition date in order to fit within the safe harbor of § 546(b)(1)(A):

> We find more persuasive the view of the only other court of appeals to have addressed the precise question. *In Lionel Corp.*, 29 F.3d at 93, the Second Circuit discerned "nothing in § 546(b) indicating that it applies only when the lienor fits within a 'relation-back' statute." We share this view and, accordingly, we hold that there is no requirement that the "generally applicable law" referenced in section 546(b) contain an explicit relation-back mechanism.[65]

Turning to the facts of this case. After incurring serious injuries by reason of a motorcycle-automobile accident, the Hospital furnished the Debtor with pre-petition, emergency medical services. Under the Utah Hospital Lien Act, the Hospital was entitled to an immediate and automatic lien on any judgment, settlement, or compromise going or belonging to the Debtor, less any amount paid by the Debtor for attorney fees, court costs, and other necessary expenses incidental to obtaining the judgment, settlement, or compromise.[66] This lien "has priority over any other creditor or the patient to the entirety of the net judgment (total judgment less attorney's fees) up to its asserted lien . . . ."[67] In short, the Utah Hospital Lien Law creates an immediate property interest in the hospital that is superior to any other creditor "that acquires rights in such property before the date of perfection."[68] Thus, the post-petition perfection of a hospital lien falls within the exception to the automatic stay of § 362(b)(3).

## IV. CONCLUSION

Based on the plain meaning of the Utah's Hospital Lien Law, as ascertained by reviewing the definitional terms of "is entitled to assert a lien," coupled with an analysis of the entire text in

---

[65] *Id*. at 12.
[66] UTAH CODE ANN. § 38-7-1.
[67] *Bryner*, 428 P.3d 1096, 1100 (Utah 2018).
[68] 11 U.S.C. § 546(b)(1).

light of its linguistic, structural, and statutory context and the physical and logical relation of its many parts, the Court finds that a hospital lien under UTAH CODE ANN. § 38-7-1(1)(a) immediately attaches when a hospital "furnishes emergency, medical, or other service to a patient injured by reason of an accident. . . ." The Court further finds that the post-petition filing of a notice of hospital lien under UTAH CODE ANN. § 38-7-2 does not violate the automatic stay under the exception in § 362(b)(3). Thus, the Hospital did not violate the stay when it filed its notice of lien post-petition. Accordingly, the Debtor's motion for sanctions under § 362(k) is denied. In the absence of any new motions being filed, the Court will re-close this case thirty (30) days after entry of this decision. The Court will enter an order consistent with this Memorandum Decision.

_____END OF DOCUMENT_____

_____ooo0ooo_____

# DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- P. Matthew Cox    bankruptcy_pmc@scmlaw.com
- Mary M. Hunt tr    hunttrustee@dorsey.com, hunt.peggy@dorsey.com;UT18@ecfcbis.com
- William P. Morrison    willmorrison01@gmail.com, G23388@notify.cincompass.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.